122 P.3d 686 (2005)
2005 UT App 393
STATE of Utah, in the interest of S.O., S.U.O., and E.O., persons under eighteen years of age.
H.O., Appellant,
v.
State of Utah, Appellee.
No. 20041065-CA.
Court of Appeals of Utah.
September 15, 2005.
*688 Douglas F. White, Bountiful, for Appellant.
Mark L. Shurtleff, Attorney General, and John M. Peterson, Assistant Attorney General, Salt Lake City, for Appellee.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before BILLINGS, P.J., BENCH, Associate Presiding Judge, and ORME, J.

MEMORANDUM DECISION
PER CURIAM:
¶ 1 H.O. appeals from an order terminating his parental rights. This appeal presents procedural issues concerning (1) choice of law in an action to terminate parental rights of a nonresident parent and (2) application of a statute of limitations to parental termination proceedings. H.O. also challenges the sufficiency of the evidence to support termination and the juvenile court's failure to order reunification services.[1]
¶ 2 H.O. contends that the juvenile court erred by applying Utah law to his acts that occurred in Arizona. He argues that Utah applies the lex loci delecti approach to determine choice of law in tort cases, citing Velasquez v. Greyhound Lines, Inc., 12 Utah 2d 379, 366 P.2d 989 (1961). On that basis, he asserts that Arizona law should apply to this parental rights termination proceeding because his conduct relied upon by the juvenile court occurred while the family resided in Arizona and before his wife and children moved to Utah.
¶ 3 H.O.'s choice of law analysis is incorrect. Utah has adopted the "most significant relationship" approach to choice of law analysis. See Waddoups v. Amalgamated Sugar Co., 2002 UT 69, ¶ 14, 54 P.3d 1054 ("In Utah we apply the `most significant relationship' approach as described in the Restatement (Second) of Conflict of Laws in determining which state's laws should apply to a given circumstance."). In Waddoups, the Utah Supreme Court stated:
To apply the "most significant relationship" approach, we first characterize the nature of the claim. We determine at the outset whether the problem presented relates to torts, contracts, property, or some other field, in order to identify an appropriate set of factors to determine which forum has the "most significant relationship" to the cause of action. . . . This is essential because the particular factors considered in determining the "most significant relationship" vary according to the type of action brought.
Id. at ¶ 15. After determining that Waddoups involved tort claims, the supreme court proceeded to determine which state "`has the most significant relationship to the occurrence and the parties.'" Id. at ¶ 18 (citations omitted).
¶ 4 Proceedings to terminate parental rights are "status" adjudications. See In re W.A., 2002 UT 127, ¶ 47, 63 P.3d 607 ("[A] parental termination proceeding involves the `status' of a child vis-a-vis its parents."). The Guardian ad Litem (GAL) points out that the Utah Uniform Child Custody Jurisdiction and Enforcement Act, principally known for its regulation of subject matter jurisdiction, contains a significant-relationship choice of law provision that is fully consistent with Utah's general approach. See Utah Code Ann. §§ 78-45c-201 to -210 (Supp 2005). The GAL argues that once Utah determined it had jurisdiction and Arizona declined jurisdiction, the Utah court necessarily determined that Utah is the state with the "most significant relationship" for choice of law purposes. We agree.
¶ 5 The Oregon Supreme Court adopted a similar choice of law analysis to determine what law should apply in determining the *689 validity of a consent to adoption. See In re Adoption of Y.R.W., 320 Or. 620, 892 P.2d 991, 998 (1995). A birth mother's consent, which was executed in Washington, was introduced in adoption proceedings in Oregon. While noting the general rule that the law of the forum state is applied to adoption cases, the Oregon Supreme Court observed that "[a] consent to adoption can have the ultimate effect of terminating all of the individual's parental rights." Id. at 997. The court concluded that Oregon's version of the Uniform Child Custody Jurisdiction Act (UCCJA) mitigated the potential danger of forum shopping in adoption cases, stating:
The UCCJA is intended to prevent forum shopping and is designed to insure that child custody litigation ordinarily takes place in the state with the closest connection to the child. . . . Thus, when a state has jurisdiction in a child custody matter, the UCCJA guarantees that the forum state has an interest in applying its own law to the case.
Id. at 998; see also In re Adoption of Baby Boy S., 22 Kan.App.2d 119, 912 P.2d 761, 767 (1996) (concluding that significant contacts with child residing in Kansas created an interest supporting application of its laws to termination proceeding that did not violate father's due process rights).
¶ 6 Similarly, in the context of its ruling on jurisdiction to terminate parental rights of a nonresident parent in In re W.A., the Utah Supreme Court stated:
First, it is clear that the interests of this state are paramount to the interests of any other state. W.A. is present in this state and `all relevant information concerning his welfare, progress, needs, and potential adoptive family' are easily accessible here. . . . This state had been financially, emotionally, and physically supporting W.A. since he was adjudicated a dependent child. . . . Perhaps most importantly, we are concerned that if we refuse to exercise authority over [the child's mother], no other state would be able to assert jurisdiction to resolve W.A.'s status. Therefore, because this state clearly has an interest in the outcome of this case paramount to that of any other state, it is only appropriate for the termination of parental rights to occur in Utah.
2002 UT 127 at ¶ 29, 63 P.3d 607 (quoting In re W.A., 2002 UT App 72, ¶ 54, 442 Utah Adv. Rep. 27 (Bench, J., dissenting)).
¶ 7 We reject H.O.'s claim that Arizona law should have been applied in this termination proceeding. Application of the "most significant relationship" approach supports the application of Utah law. The parental rights termination proceeding is a status adjudication to determine the child's status vis-a-vis the parent. As such, the state where the child resides is a highly significant factor. The children have resided in Utah since September of 2001 and have been in state custody since January of 2002. All facts pertaining to their care, health, therapeutic needs, education, and potential adoptive parents are readily available in Utah. In May of 2002, the juvenile court found the children to be within its jurisdiction based upon findings that they had been abused by H.O. due to chronic domestic violence. H.O. did not appeal that final appealable order. Most significantly, after consultation with the Utah juvenile court, the Arizona court declined jurisdiction over the child custody proceeding. See In re S.O., 2003 UT App 130, 2003 WL 21299596 (per curiam). Under these circumstances, we conclude that Utah is the state with the most significant relationship to the children and the proceedings to terminate parental rights.
¶ 8 H.O. next argues that the State has failed to demonstrate that his alleged acts of abuse occurred within the four-year "catch-all" statute of limitations contained in Utah Code section 78-12-25. See Utah Code Ann. § 78-12-25 (2002). Under the general rule, an affirmative defense based upon the statute of limitations must be raised in a responsive pleading or it is waived. See Tucker v. State Farm Mut. Auto. Ins. Co., 2002 UT 54, ¶ 7, 53 P.3d 947; see also Staker v. Huntington Cleveland Irr. Co., 664 P.2d 1188, 1190 (Utah 1983) ("The statute of limitations must be pleaded as an affirmative defense in a responsive pleading or it is waived."). However, when a complaint includes all information, including salient dates, demonstrating that the action is time-based, *690 the statute of limitations may be raised in a motion to dismiss. Moreover, "in the narrow instance where a plaintiff's complaint describes events which establish when a statute of limitations begins to run but fails to explicitly set forth the relevant date on which those events occurred, a defendant may raise the statute of limitations defense in a motion." Id. at ¶ 11. Because the statute of limitations must be pleaded as an affirmative defense or it is waived, "[s]tatutes of limitations are therefore not jurisdictional in the civil context." James v. Galetka, 965 P.2d 567, 571 (Utah Ct.App.1998).
¶ 9 H.O. did not file a formal answer to the petition to terminate his parental rights; accordingly, he did not file a responsive pleading asserting the statute of limitations as an affirmative defense. Although H.O. moved to dismiss the child welfare proceedings on grounds that the juvenile court lacked personal jurisdiction over him and also lacked subject matter jurisdiction under provisions of the UCCJEA, H.O. did not raise the affirmative defense of the statute of limitations by motion. Accordingly, the record before us contains no answer and no motion asserting the statute of limitations as an affirmative defense.
¶ 10 H.O.'s counsel purported to preserve a statute of limitations issue at trial without making reference to the specific statute of limitations. Counsel argued in closing that "[t]here is no clear and convincing evidence that [H.O.'s] actions occurred, if they occurred at all, after September 1998 to be actionable in this court." However, a defendant has "the burden of proving every element necessary to establish that the statute of limitations bars [plaintiff's] claims." Conder v. Hunt, 2000 UT App 105, ¶ 14, 1 P.3d 558. Even if we were to assume that this reference to the statute of limitations attempted to raise the affirmative defense, it was neither timely nor specific enough, as further indicated by the lack of any reference to the statute of limitations in the Amended Findings of Fact, Conclusions of Law, and Order. H.O., not the State, had the burden to establish every element that would support his claim that the petition to terminate parental rights was barred by the statute of limitations, and he failed to satisfy that burden.[2]
¶ 11 H.O. further contends that the juvenile court erred in failing to order the Division of Child and Family Services to provide reunification services. The juvenile court did not order services for H.O. because he refused to recognize Utah's jurisdiction over the proceedings involving his children. H.O. argues that he was justified in challenging Utah's jurisdiction; nevertheless, this choice posed a risk to his ability to access reunification services through the State of Utah. "Reunification services are a gratuity provided to parents by the Legislature, and appellants thus have no constitutional right to receive these services." In re N.R., 967 P.2d 951, 955-56 (Utah Ct.App.1998); see also Utah Code Ann. § 78-3a-311(3)(a)(Supp.2005) ("[A] parent's interest in receiving reunification services is limited."). The juvenile court did not err in failing to order reunification services under the circumstances of this case.
¶ 12 H.O. also challenges the sufficiency of the evidence supporting the juvenile court's decision to terminate his parental rights. We "review the juvenile court's factual findings based upon the clearly erroneous standard." In re E.R., 2001 UT App 66, ¶ 11, 21 P.3d 680. "[W]e defer to the juvenile court because of its advantaged position with respect to the parties and the witnesses in assessing credibility and personalities." In re S.L., 1999 UT App 390, ¶ 20, 995 P.2d 17 (citations omitted). Finally, a challenge to the termination based upon the findings is reviewed for correctness. See In re C.K., 2000 UT App 11, ¶ 17, 996 P.2d 1059. Although we granted him an opportunity for full briefing, H.O. has not satisfied his burden on appeal by marshaling the evidence *691 supporting the findings, then demonstrating that despite this evidence, the juvenile court's findings are so lacking in support as to be against the clear weight of the evidence. See In re E.R., 2001 UT App 66 at ¶ 5, 21 P.3d 680. H.O. has not marshaled the substantial evidence supporting the juvenile court's findings, and his presentation seeks to reargue his position by a selective and incomplete marshaling of the evidence. Accordingly, he has failed to demonstrate that any finding is clearly erroneous. H.O. also does not challenge all grounds for termination of parental rights nor demonstrate that the findings of fact fail to support any ground for termination. See Utah Code Ann. § 78-3a-407(1) (2002) (allowing termination of parental rights based upon any one of the enumerated grounds).
¶ 13 Accordingly, we affirm the order terminating H.O.'s parental rights.
NOTES
[1] In an order dated February 22, 2005, we concluded that In re W.A., 2002 UT 127, 63 P.3d 607, was dispositive of the claim that the court lacked personal jurisdiction over H.O. We affirmed the juvenile court's determination that it had personal jurisdiction over H.O. in these parental rights termination proceedings, and ordered briefing on the remaining issues. See Utah R.App. P. 58(a) (stating that after reviewing a petition on appeal, any responses and the record, the appellate court "may issue a decision or may set the case for full briefing").
[2] H.O. conceded that the court received evidence of a domestic violence incident that occurred between the parents on September 5, 2001. Accordingly, even if this court were to accept a claim that the four-year statute of limitations applied to this case, both the original petition to terminate parental rights filed on September 19, 2002, and the amended petition filed on May 5, 2003, were filed within four years of September 5, 2001.