250 P.3d 69 (2011)
2011 UT App 55
STATE of Utah, Plaintiff and Appellee,
v.
C.D.L., Defendant and Appellant.
No. 20090474-CA.
Court of Appeals of Utah.
February 25, 2011.
*72 Troy L. Booher and M. Lane Molen, Salt Lake City, for Appellant.
Mark L. Shurtleff and Brett J. DelPorto, Salt Lake City, for Appellee.
Before Judges DAVIS, THORNE, and ROTH.

OPINION
ROTH, Judge:
¶ 1 Defendant C.D.L.[1] (Husband) appeals his conviction of four counts of aggravated assault, see Utah Code Ann. § 76-5-103 (2008), alleging that he received ineffective assistance from his trial counsel. We affirm.

BACKGROUND[2]
¶ 2 While driving through traffic in Salt Lake City, Utah, near the intersection of 300 East and Williams Avenue at around 6:00 p.m. on a weekday, Husband ran his green Dodge Shadow two times into a red Ford Escort driven by his wife (Wife), who was accompanied by a passenger (Friend). In the first collision, Husband's vehicle struck Wife's vehicle with an audible crash, jolting her vehicle forward. Then, with little distance *73 left between the two vehicles, Husband accelerated to approximately fifteen miles per hour before striking Wife's vehicle a second time. The impacts left only a few faint scratches on each vehicle, the airbags did not deploy, and Husband, Wife, and Friend did not report any injuries.
¶ 3 After the second collision, Wife drove toward the red traffic light at 300 East and 900 South and, in an attempt to evade Husband, maneuvered around another car already stopped at the light and ran through the red signal. Husband followed Wife for several blocks until both stopped at another red light by Liberty Park at the intersection of 700 East and 1300 South. While stopped at this light, Husband, visibly angry and yelling, got out of his vehicle and started toward Wife's vehicle on foot. Before Husband reached her vehicle, Wife sped around the other cars stopped at the red light, ran that red light, and drove away. Husband returned to his vehicle but ceased following Wife.
¶ 4 From another vehicle, two adult eyewitnesses (the Witnesses) had observed this "rolling domestic" as it unfolded. The Witnesses were stopped at the intersection of 300 East and Williams Avenue where, just ten feet in front of them, they watched Husband repeatedly run into Wife's car. They called 911 after witnessing the second impact. With authorities on the phone and fearful for Wife's and Friend's safety, the Witnesses followed Husband and Wife during the subsequent car chase and observed the entire course of events. At the intersection of 700 East and 1300 South where Husband got out of his car, one of the Witnesses began exiting his own vehicle intending to intervene, but Wife sped away and Husband's pursuit ended.
¶ 5 The Witnesses' 911 call provided police officers with a description of both vehicles, Husband's license plate number, and a report of the collisions and subsequent chase. From the Dodge Shadow's license plate number, police obtained the address and name of Wife, as both the Dodge Shadow driven by Husband and the Ford Escort she drove were registered under her name. Police convened at Wife's address and found the Dodge Shadow parked in the front lot and only Husband inside the residence. Husband admitted to police that he chased Wife in an attempt "to sort out some of the problems that they had." Husband also told police his vehicle unintentionally collided with Wife's during the chase. Wife arrived at that address in the Ford Escort later in the evening and briefly met with police officers.
¶ 6 Husband was subsequently charged with four counts of aggravated assault. The State's theory of the case was that Husband's vehicle constituted a dangerous weapon when used to repeatedly hit Wife's vehicle. Husband's defense was that the collisions were accidental. In so arguing, Husband relied on the testimony of Friend, who described the entire incident as a "funny" misunderstanding that was not particularly startling. Friend testified that the first collision occurred because Wife stopped short and the second occurred when Wife rolled backwards into Husband because she improperly engaged the vehicle's clutch.
¶ 7 In response, the State relied primarily on testimony from the Witnesses and the two responding police officers. Wife did not testify at trial, and the State implied that her absence was illustrative of a broader cycle of domestic violence between her and Husband. Despite Wife's absence from trial, the Witnesses were able to testify that Wife's brake lights did not turn on and that she did not induce the first accident by stopping short, nor did she cause the second impact by rolling backwards into Husband. Rather, the Witnesses described both impacts as "rammings" resulting from deliberate actions taken by Husband to "terrorize" Wife in what they perceived to be more than a standard car accident.
¶ 8 The State also submitted a recording and the transcript of a 911 call placed by a woman who identified herself as Wife. Amidst a flurry of curses and yelling, the caller described her pursuer as her husband. She also described the location of both collisions, the subsequent chase, and the makes and models of the two vehicles involved. The caller's entire description of the events matched that provided by the Witnesses during their testimonies; and the caller's descriptions *74 of the vehicles involved also corresponded with the vehicles described by the Witnesses as well as the vehicles police eventually found at Husband and Wife's home registered under Wife's name. Friend did not deny that this 911 call was placed by Wife and was unable to explain why, in light of Friend's own testimony that the situation was not startling, Wife would call 911.
¶ 9 Prior to trial, Husband's trial counsel objected to the admission of the recording and transcript of the 911 call on the grounds that they "lacked foundation, could not be properly authenticated, was hearsay, and was highly prejudicial," specifically noting that there was no direct evidence that the caller, in fact, was Wife. The trial court overruled the hearsay and unfair prejudice objections, ruling that the 911 call constituted an excited utterance and was not unfairly prejudicial. The trial court, however, reserved ruling on the authentication objection in order to see what evidence on the issue was presented at trial. In this regard, the 911 dispatcher who answered the 911 call testified at trial, confirming that it was his voice on the recording and that the contents of both the recording and transcript accurately reflected the call as he remembered it. The State then moved to admit both the recording and transcript into evidence. At that time, the trial court asked whether Husband's trial counsel had any objections, and he declined to renew his authentication objection.
¶ 10 The jury found Husband guilty of four counts of aggravated assault. After trial and before sentencing, Wife submitted a Victim Impact Statement and an unsworn letter addressed to the trial court (collectively, the VIS), in which she admitted that she made the 911 call but described it as a fabrication intended to harm Husband. She further described the 911 call itself and her description of the collisions in the call as the premeditated product of her jealousy and anger originating from unspecified domestic problems. Wife also attributed the scratches on her Ford Escort to an earlier, unrelated car accident. She wrote of her desire to tell her story at trial but stated cryptically that she had been unable to testify because of her "legal situation." Husband now appeals.

ISSUES AND STANDARDS OF REVIEW
¶ 11 Husband raises three separate claims of ineffective assistance of counsel, alleging that his trial counsel was ineffective for (1) failing to move for a directed verdict on the basis that there was insufficient evidence to sustain the dangerous weapon aggravating element of the assault charges; (2) failing to renew his objections at trial to the admission of the recording and transcript of the 911 call as unauthenticated, hearsay, and unfairly prejudicial; and (3) failing to move for a new trial based upon newly discovered evidencenamely, Wife's posttrial statements in the VIS discrediting those statements made in the 911 call.
¶ 12 Ineffective assistance of counsel claims raised for the first time on appeal present questions of law. See State v. Bryant, 965 P.2d 539, 542 (Utah Ct.App. 1998). Review of Husband's ineffectiveness claims, however, implicates subsidiary standards of review for issues such as a motion for directed verdict based on insufficiency of the evidence, the admissibility of hearsay, and whether evidence is unfairly prejudicial. In order to facilitate our analysis, we will address the applicable subsidiary standard of review before analyzing each such issue.

ANALYSIS

I. Ineffective Assistance of Counsel
¶ 13 To succeed on an ineffective assistance of counsel claim, Husband must show that his trial counsel's performance was both deficient and prejudicial. See Nicholls v. State, 2009 UT 12, ¶ 36, 203 P.3d 976 (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Failure to satisfy either component of this test is fatal to an ineffective assistance of counsel claim. See State v. Holbert, 2002 UT App 426, ¶ 53, 61 P.3d 291. The deficiency prong can be satisfied by showing that trial "`counsel's representation fell below an objective standard of reasonableness'" due to "`errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" Nicholls, 2009 UT 12, ¶ 37, 203 P.3d 976 (footnote *75 omitted) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). Trial counsel's actions, however, are presumed to be part of a "sound trial strategy . . . within the wide range of reasonable professional assistance." Bryant, 965 P.2d at 542 (internal quotation marks omitted). To overcome this presumption of effectiveness, there must be a demonstrable "lack of any conceivable tactical basis for counsel's actions." Id. (internal quotation marks omitted). Given the "wide latitude" of what constitutes acceptable trial strategy, see State v. Maestas, 1999 UT 32, ¶ 20, 984 P.2d 376, the court will assume trial counsel acted effectively "if a rational basis for counsel's performance can be articulated," Bryant, 965 P.2d at 542-43. To prevail on the prejudice prong of an ineffective assistance of counsel claim, it must be shown that "`there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Lafferty v. State, 2007 UT 73, ¶ 13, 175 P.3d 530 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). Husband has raised three separate claims of ineffectiveness in this appeal, as outlined above. We address each claim in turn.

A. Directed Verdict
¶ 14 Husband argues that his trial counsel was deficient for failing to move for a directed verdict because there was insufficient evidence from which a jury could find that Husband used his car as a dangerous weapon.
¶ 15 "This court's standard of review of a directed verdict is the same as that imposed upon a trial court," in that the motion will only be granted if there is "no competent evidence that would support a verdict in the non-moving party's favor." Merino v. Albertsons, Inc., 1999 UT 14, ¶ 3, 975 P.2d 467 (internal quotation marks omitted). A directed verdict should not be granted "`if, upon reviewing the evidence and all inferences that can be reasonably drawn from it . . . some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt.'" State v. Cristobal, 2010 UT App 228, ¶ 6, 238 P.3d 1096 (quoting State v. Montoya, 2004 UT 5, ¶ 29, 84 P.3d 1183). Here, if the State presented "no competent evidence," see Merino, 1999 UT 14, ¶ 3, 975 P.2d 467, "from which a reasonable jury could find that the [dangerous weapon aggravating element] had been proven beyond a reasonable doubt," see Cristobal, 2010 UT App 228, ¶ 6, 238 P.3d 1096 (internal quotation marks omitted), then Husband's trial counsel should have moved for a directed verdict, and failure to do so would likely constitute deficient performance. However, if the State did present "some evidence . . . from which a reasonable jury could find" that the dangerous weapon aggravating element "had been proven beyond a reasonable doubt," see id. (internal quotation marks omitted), a directed verdict could not properly be granted, and Husband's trial counsel would not be ineffective for failing "to raise [a] futile" directed verdict motion, see generally State v. Kelley, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").
¶ 16 To prove aggravated assault, the State had to demonstrate that Husband had committed assault with a dangerous weapon. See generally Utah Code Ann. § 76-5-103 (2008) (current version at id. (Supp. 2010)). A dangerous weapon is "any item capable of causing death or serious bodily injury."[3]Id. § 76-1-601(5)(a) (emphasis added). Thus, because an item must simply be capable of causing death or serious bodily injury, an item not necessarily manufactured as a dangerous weapon may nonetheless become one. "In construing whether an item, object, or thing not commonly known as a dangerous weapon is a dangerous weapon, the character of the instrument, object, or thing; the character of the wound produced, if any; and the manner in which the instrument, object, or thing was used are determinative." State v. Archambeau, 820 P.2d 920, *76 927 (Utah Ct.App.1991).[4] In other words, "an item will be considered a dangerous weapon if, based upon its actual use, subjectively intended use, or objectively understood use, it can cause death or serious bodily injury." Id.
¶ 17 Because an object that is not manufactured as a dangerous weapon may nonetheless become a dangerous weapon based upon its actual or subjectively intended use, see id., the question of whether an otherwise nondeadly object has been used in such a way that it is capable of causing death or serious bodily injury will generally be a question of fact. And factual issues surrounding how an object was used or the effect of the object's use are best resolved by the fact finder. Once an object is used in such a way that it is reasonably capable of causing death or serious bodily injury, that is enough to warrant submitting the issue to the fact finder.
¶ 18 Although a motor vehicle is not intended to be a weapon, it is clearly capable of inflicting grave injury or death. Even though the evidence in this case shows that Husband did not use his vehicle in a way that actually caused death or serious bodily injury, there is sufficient evidence from which a reasonable jury could conclude that Husband purposefully and angrily used his vehicle as a ramming device to hit Wife's vehiclea use that the jury could reasonably conclude was capable of causing serious bodily injury or death. Here, Husband targeted Wife's vehicle, chasing her in traffic and hitting her vehicle twice with his own. The Witnesses described the collisions as deliberate and perceived them to be more than a routine traffic accident. The incident appeared threatening and violent enough that it caused the Witnesses to call 911, pursue Husband and Wife, and even prepare to intervene when Husband exited his vehicle and approached Wife's vehicle on foot. Furthermore, the circumstances led Wife to place a 911 call asking for help and even to risk driving through multiple red lights in traffic in order to evade Husband. Certainly there was other evidence presented at trial consistent with Husband's argument that the collisions were not life-threatening: neither Husband's nor Wife's vehicles sustained more than a few faint scratches; neither vehicle was impacted hard enough to cause the air bags to deploy; none of the involved parties were injured; and Friend testified that the collisions were accidental and "funny." The evidence also indicates that Husband did not strike Wife's vehicle at a high rate of speed, especially in the second collision where there was only a minimal distance between the two vehicles.[5] These factual discrepancies, however, present questions of fact as to whether Husband's use of the vehicle made it a dangerous weapon that are best resolved by the fact finder. In other words, the tension between the evidence supporting and opposing a conclusion that Husband used the vehicle as a dangerous weapon was for the jury to resolve, not the trial court.
¶ 19 In summary, we conclude that sufficient evidence was presented at trial from which the jury could conclude beyond a reasonable doubt that Husband used his vehicle as a dangerous weapon. See Cristobal, 2010 UT App 228, ¶ 6, 238 P.3d 1096. Husband's trial counsel, therefore, was not ineffective *77 for failing to move for a directed verdict that would properly have been denied. See Kelley, 2000 UT 41, ¶ 26, 1 P.3d 546.

B. Admission of the 911 Call
¶ 20 Husband claims that trial counsel was ineffective for failing to renew at trial his pretrial objections to the admission of the recording and transcript of the 911 call. These pretrial objections were threefold, arguing that the 911 call was not properly authenticated, constituted inadmissible hearsay, and was unfairly prejudicial.
¶ 21 Husband appears to couch what are essentially claims concerning the admissibility of evidence in terms of ineffective assistance of trial counsel in an attempt to overcome his concerns that these issues were not properly preserved for appeal because the objections were not raised a second time at trial after being addressed at an evidentiary hearing. See generally State v. Irwin, 924 P.2d 5, 7 (Utah Ct.App.1996) (describing preservation as a "well-established rule" that prohibits a defendant "who fails to bring an issue before the trial court . . . from raising it for the first time on appeal"); see also id. (explaining that one exception to the preservation rule is when a defendant raises "a claim of ineffective assistance of counsel . . . even though, by reason of the claimed ineffectiveness, the matter was not raised below"). However, when Husband's trial counsel objected to the admission of the 911 call at the pretrial hearing, the trial court ruled on the hearsay and prejudice issues. Therefore, Husband's trial counsel effectively preserved those issues for our review. See generally Brookside Mobile Home Park, Ltd. v. Peebles, 2002 UT 48, ¶ 14, 48 P.3d 968 ("[O]nce trial counsel has raised an issue before the trial court, and the trial court has considered the issue, the issue is preserved for appeal."). We will therefore review the hearsay and prejudice arguments directly because they were properly preserved.
¶ 22 Preservation, though, extends only to the two issues the trial court actually definitively decided: hearsay and unfair prejudice. Here, the trial court deferred ruling on the authentication objection until and unless a proper foundation for the evidence could be provided at trial. Thus, the trial court's deferred ruling left it up to Husband's trial counsel to reraise this objection at trial in order to preserve that issue for appeal. See generally State v. Hansen, 2002 UT 114, ¶ 16, 61 P.3d 1062 (stating that "when a court properly defers ruling on an issue that has been raised and plainly instructs the objecting party to re-raise the issue at a specific later time . . . the requirement of a timely objection to preserve the issue for review is renewed under the terms set forth by the trial court" (citation omitted)). Husband's trial counsel, however, did not reraise the authentication objection at trial. Because "no such later objection [wa]s made" the issue was not "`presented to the trial court in a manner sufficient to obtain a ruling thereon,' thereby preserving the issue for review." See id. (quoting Buehner Block Co. v. UWC Assocs., 752 P.2d 892, 894 n. 2 (Utah 1988)). For this reason, we will review the authentication issue as an ineffective assistance of counsel claim.

1. Authentication
¶ 23 Husband argues that his trial counsel should have reasserted his objection to the authentication of the recording and transcript of the 911 call because the State did not conclusively identify Wife as the caller.
¶ 24 Rule 901 of the Utah Rules of Evidence requires authentication by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Utah R. Evid. 901. To this end, the rule provides a nonexhaustive list of examples illustrating how authentication can be satisfied, noting, for example, that a voice may be identified "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker" or where "circumstances, including self-identification, show the person answering to be the one called." Id. R. 901(b)(5), (6). Proper authentication does not require conclusive proof but, instead, requires only that the trial court determine that there is "evidence sufficient to support a finding of the fulfillment of [a] condition" of fact. Id. R. 104(a), (b); see also Fed.R.Evid. 901 advisory comm. notes (explaining that "showing authenticity or identity *78 falls in the category of relevancy dependent upon fulfillment of a condition of fact and is governed by the procedure set forth in rule 104(b)"); O'Neal v. Esty, 637 F.2d 846, 850 (2d Cir.1980) (explaining the relationship between rule 901 and rule 104(b) under the Federal Rules of Evidence); see also State v. Silva, 2000 UT App 292, ¶¶ 16-19, 13 P.3d 604 (distinguishing requirements for authentication under rule 901 from the more stringent constitutional requirements to determine the reliability of eyewitness testimony).
¶ 25 Authentication of a telephone caller's identity can be accomplished by combining that caller's self-identification during the call with circumstances surrounding the call. Particularly, "[t]he identity of a telephone caller may be established by self-identification of the caller coupled with additional evidence such as the context and timing of the telephone call, the contents of the statement challenged, internal patterns or other distinctive characteristics, and disclosure of knowledge of facts known peculiarly to the caller." United States v. Orozco-Santillan, 903 F.2d 1262, 1266 (9th Cir.1990), overruled in part on other grounds by United States v. Hanna, 293 F.3d 1080, 1088 n. 5 (9th Cir.2002); see also State v. Rushton, 2003 UT App 25U, para. 4, 2003 WL 21299576 (mem.) (looking to self-identification and other contextual evidence to authenticate a caller's identity); United States v. Puerta Restrepo, 814 F.2d 1236, 1239 (7th Cir.1987) ("[I]t is not necessary that someone familiar with the speaker's voice identify it. The authentication may be established by circumstantial evidence such as the similarity between what was discussed by the speakers and what each subsequently did." (citation omitted)).
¶ 26 Here, the State presented sufficient evidence to authenticate not only the content of the 911 call but that the caller's identity is Wife. The dispatcher who received the 911 call testified at trial that the other voice on the call was his and that the content of the recording and transcript presented in court was from the very 911 call he answered the day of the events at issue here. Further, the caller identified herself as Wife. And Friend, who was present during the events detailed by the call, did not deny at trial that Wife made the 911 call.
¶ 27 Other contextual evidence presented at trial further authenticates the content of the 911 call as well as the caller's identity as Wife. The caller identified her husband as the driver of the green Dodge Shadow that was pursuing her and described her own vehicle as a red Ford Escort. Not only do these descriptions of the involved vehicles match those given by the Witnesses, but the police later determined that both vehicles were registered to Wife and located those vehicles at her residence. There they found Husband, who admitted to chasing Wife and colliding with her.
¶ 28 In its totality, the evidence presented at trial sufficiently establishes that the 911 call is what it purports to be: an emergency call made by Wife during a domestic dispute with Husband. And more specifically, the evidence is sufficient to authenticate the identity of the caller as Wife because, in addition to the caller's self-identification as Wife, the caller's description of the involved vehicles matches Wife's property, and the caller's description of the incident is consistent with the description given by the Witnessesan incident to which Wife is connected.[6] Because the transcript and recording of the 911 call were properly authenticated, it would have been fruitless for Husband's trial counsel to object to their authenticity. Therefore, trial counsel's failure to renew his authentication objection does not constitute ineffective assistance of counsel. See generally State v. Kelley, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

2. Hearsay and Excited Utterance
¶ 29 Husband argues that the recording and transcript of the 911 call constitute inadmissible hearsay that is not subject *79 to the excited utterance exception. See generally Utah R. Evid. 801(c) (defining hearsay); id. R. 803(2) (defining excited utterance). A three-tiered standard of review is used to review the admissibility of hearsay. See State v. Workman, 2005 UT 66, ¶ 10, 122 P.3d 639. In reviewing the admissibility of hearsay, legal conclusions are reviewed for correctness, factual determinations are reviewed for clear error, and the ultimate question of admissibility is reviewed for abuse of discretion. See id.
¶ 30 Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Utah R. Evid. 801(c). Unless otherwise provided for by law or in the Utah Rules of Evidence, hearsay is not admissible. See id. R. 802. An excited utterance is one such exception involving a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Id. R. 803(2). A three-prong test is used to determine when a statement is admissible as an excited utterance. See State v. Cude, 784 P.2d 1197, 1200 (Utah 1989). The test requires that "(1) a startling event or condition has occurred; (2) the statement was made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement relates to the startling event or condition." Id. (internal quotation marks omitted).
¶ 31 The first step of the excited utterance testthe determination of whether an event is sufficiently startlingis a question of fact. See State v. Mickelson, 848 P.2d 677, 684 (Utah Ct.App.1992). Thus, "[t]he [trial] court's finding on this issue . . . constitutes a subsidiary factual determination and is reviewed under the deferential `clearly erroneous' standard." Id. (affirming trial court's finding that a startling event had occurred regardless of one witness's testimony that the event had not occurred at all). Here, Husband argues that the recording and transcript of the 911 call do not qualify as an excited utterance because the nature of the event was not sufficiently startling but was actually, as Friend described, "funny." Furthermore, the collisions appear to have been very minor as demonstrated by the superficial vehicle damage sustained, the lack of any personal injuries, and the fact that the airbags did not deploy. However, the events also motivated the Witnesses to call 911 and detour from their own travels to follow Husband and Wife. They testified that the collisions appeared deliberate and perceived them to be more than a routine traffic accident. In fact, the Witnesses were so concerned for Wife's and Friend's safety that one of them was ready to physically intervene when Husband, visibly angry and shouting, approached Wife's vehicle on foot. In addition, Wife also placed a distressed emergency call for help with 911, and the tone and intensity of Wife's voice corroborate the Witnesses' testimonies that the event was startling and frightening.[7] Given the evidence, the trial court's subsidiary factual finding that the collisions and subsequent car chase constituted a "startling event" was not clearly erroneous.
¶ 32 Next, we must determine whether the statements contained in the 911 call were made while Wife was under the stress of the situation and whether the statements relate to the startling situation. Here, Wife's statements to the 911 dispatcher were made contemporaneously with the course of the events, describing the events as they unfolded. Thus, both of these requirements are fulfilled.
¶ 33 Because all three prongs of the excited utterance exception are satisfied, the trial court did not err in concluding that the 911 call constitutes an excited utterance and, therefore, did not abuse its discretion in admitting the recording and transcript of the 911 call under the excited utterance exception.

*80 3. Unfair Prejudice
¶ 34 Husband argues that the recording and transcript of the 911 call are unfairly prejudicial under rule 403 of the Utah Rules of Evidence because that evidence caused the jury to "overlook physical evidence and other conflicting testimony" refuting the aggravating element of the charges. Whether evidence is admissible under rule 403 is reviewed for an abuse of discretion. See State v. Tarrats, 2005 UT 50, ¶ 16, 122 P.3d 581.
¶ 35 Under rule 403, the court "indulg[es] a presumption in favor of admissibility." State v. Dunn, 850 P.2d 1201, 1222 (Utah 1993); see also Woods v. Zeluff, 2007 UT App 84, ¶ 6, 158 P.3d 552. In determining the admissibility of evidence, rule 403 employs a balancing test that permits a court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Utah R. Evid. 403. "`"All effective evidence is prejudicial in the sense of being damaging to the party against whom it is offered."'" State v. Killpack, 2008 UT 49, ¶ 53, 191 P.3d 17 (Utah 2008) (quoting Woods, 2007 UT App 84, ¶ 7, 158 P.3d 552 (quoting State v. Maurer, 770 P.2d 981, 984 (Utah 1989))). Rule 403, therefore, only guards against the admission of evidence that would result in unfair prejudice, which is evidence that has "an undue tendency to suggest decision on an improper basis, commonly but not necessarily an emotional one, such as bias, sympathy, hatred, contempt, retribution or horror." Maurer, 770 P.2d at 984 (internal quotation marks omitted).
¶ 36 Here, the transcript and recording of the 911 call is more probative than prejudicial. Wife's harried tone on the call is marked by swearing and shouting that demonstrates her emotional state, which lends weight to the State's theory of the case and supports the aggravating element of the charge. The 911 call further identifies Wife as a victim of the charged offense and ultimately enabled the State to identify a victim despite Wife's absence from trial. The tone and information in the call also challenges Friend's credibility as a witness by undermining her testimony describing the entire situation as "funny." The 911 call also substantiates the Witnesses' testimonies by corroborating the details they testified to and their impression that this was a frightening situation. Although the 911 call is prejudicial in that it is damaging to Husband's defense, there is no indication that the evidence is unfairly prejudicial in that it encouraged "a decision on an improper basis." See id. Therefore, the trial court did not abuse its discretion in admitting the 911 recording and transcript over Husband's trial counsel's objection that the evidence was unfairly prejudicial.

C. Victim Impact Statement
¶ 37 Finally, Husband argues that trial counsel was ineffective for failing to move for a new trial in light of the VIS, in which Wife described the collisions as her fault and the 911 call as a premeditated act of jealous revenge. This "new" evidence, Husband argues, effectively "recants" the statements made in the 911 call and gives weight to Husband's defense that the collisions were not deliberate acts.
¶ 38 "[A] claim for a new trial based on newly discovered evidence" requires, among other things, that "the moving party . . . demonstrate" that the "new" evidence "could not, with reasonable diligence, have been discovered and produced at the trial." State v. Loose, 2000 UT 11, ¶ 16, 994 P.2d 1237. Husband does not explain why Wife was not called as a witness at trial by either party. Nor is it explained whether Wife was contacted prior to trial and, if so, what information, if any, was gathered from her. The closest to an explanation that is given for Wife's absence from trial is provided in the VIS, in which Wife cryptically states that she was unable to come forward with her version of the events sooner due to an unspecified "legal situation." This vague explanation is insufficient to determine whether the information in the VIS could have been discovered before trial with reasonable diligence. See id. Thus, we cannot say whether that information can properly be *81 described as "new" evidence that would entitle Husband to a new trial.
¶ 39 Further, the burden of proving that counsel was ineffective is placed firmly upon the defendant. See State v. Litherland, 2000 UT 76, ¶¶ 16-17, 19, 12 P.3d 92. "If a defendant is aware of any `nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective,' defendant bears the primary obligation and burden of moving for a temporary remand." Id. (quoting Utah R.App. P. 23B). Otherwise, an inadequate record, even one riddled with ambiguities, deficiencies, and the like, "will be construed in favor of a finding that counsel performed effectively." Id. ¶ 17.
¶ 40 No explanation is given here for Wife's absence from trial. It is not known whether either party contacted Wife prior to trial and, if so, what information, if any, was gathered from her. And we are left to speculate how that hypothetical information may have affected the parties' trial strategies. It is possible, for example, that Wife's absence from trial could have been part of Husband's trial counsel's strategy. The State, not Husband, appears to have been the party most burdened at trial by Wife's absence. Due to her absence, rather than relying on the central victim to prove the aggravated assault offenses, the State was required to rely on third-party eyewitness testimony and a 911 call.[8] The State's case was further complicated by the other victim, Friend, testifying that the entire incident was an amusing misunderstanding. Thus, assuming Wife would have testified consistently with her 911 call, Husband gained from her absence at trial. And even if Wife had testified consistently with the VIS or Friend's version of the events, the credibility of such testimony could nonetheless have been undermined by the 911 call and the Witnesses' testimonies. Under such circumstances, competent defense counsel could reasonably have concluded that the potential benefit of Wife's testimony was outweighed by its risk and that her absence at trial therefore amounted to a net advantage to Husband's defense.
¶ 41 Further, it is not known whether Wife was contacted by Husband's trial counsel after she submitted the VIS and, if so, how any information gathered from her may have affected counsel's decision on how to proceed. For example, it is possible that, following trial and after reviewing the VIS and interviewing Wife, trial counsel concluded that Wife's versions of the events would not be credible given the contradicting testimonies from the Witnesses as well as the 911 call. And it is also possible that trial counsel already knew this information by having interviewed Wife before going to trial.
¶ 42 Ultimately, the unknowns of this case permit no more than speculation about what happened and why. And although these unknowns may raise questions about trial counsel's actions, there is insufficient evidence in the record to "overcome the strong presumption" of effectiveness. See Lafferty v. State, 2007 UT 73, ¶ 12, 175 P.3d 530. We must therefore construe these ambiguities in "favor of a finding that counsel performed effectively" in not moving for a new trial after Wife submitted the VIS. See Litherland, 2000 UT 76, ¶ 17, 12 P.3d 92.

CONCLUSION
¶ 43 In conclusion, each of Husband's ineffective assistance of counsel claims must fail. Husband's trial counsel was not ineffective for failing to bring a fruitless motion for a directed verdict because the State presented sufficient evidence from which a reasonable jury could conclude that Husband had used his vehicle as a dangerous weapon. Additionally, Husband's trial counsel was not ineffective for failing to renew his authentication objection at trial because the State presented sufficient evidence to properly authenticate the recording and transcript of the 911 call. Likewise, the trial court did not abuse its discretion in admitting the recording and transcript of the 911 call because the statements therein constitute an excited utterance and are not substantially more unfairly prejudicial *82 than probative. Finally, Husband's claim that trial counsel was ineffective for failing to move for a new trial based on Wife's statements in the VIS fails because there is insufficient evidence to determine whether the VIS constitutes "new" evidence and, even if it did, it is conceivable that trial counsel had a legitimate strategic reason for not raising it in a new trial motion. As a consequence, Husband has failed to overcome the strong presumption of counsel's effectiveness.
¶ 44 Accordingly, we affirm.
¶ 45 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and WILLIAM A. THORNE JR., Judge.
NOTES
[1] Because the briefs in this case have been sealed, we refer to Defendant only by his initials.
[2] Being an appeal from a jury verdict, we will recite the "facts in a light most favorable to the. . . verdict." State v. Brown, 948 P.2d 337, 339 (Utah 1997).
[3] Serious bodily injury is defined as "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death." Utah Code Ann. § 76-1-601(11) (2008).
[4] "Dangerous weapon" is also defined by Utah Code section 76-10-501(6) in an expanded manner that is complementary to our interpretation of the term under section 76-1-601(5)(a). Compare Utah Code Ann. § 76-10-501(6), with id. § 76-1-601(5)(a). Section 76-10-501(6) defines a dangerous weapon as "any item that in the manner of its use or intended use is capable of causing death or serious bodily injury." Id. § 76-10-501(6). The statute further establishes a list of factors to be considered when determining whether an "item, object, or thing not commonly known as a dangerous weapon is a dangerous weapon." Id. These factors are as follows:

(i) the character of the instrument, object, or thing;
(ii) the character of the wound produced, if any;
(iii) the manner in which the instrument, object, or thing was used; and
(iv) the other lawful purposes for which the instrument, object, or thing may be used.
Id.
[5] But, the evidence also suggests that in the second collision Husband struck Wife's vehicle at approximately fifteen miles per hour-arguably, a rate of speed he could have reached in a minimal distance only if he had deliberately accelerated.
[6] Although not presented at trial, and therefore not part of our review now, it is of interest that Wife's statement in the VIS upon which Husband bases his claim for a new trial contains Wife's admission to making the 911 call.
[7] Husband relies on the VIS to argue on appeal that the 911 call was a fabrication that does not fall within the excited utterance exception. We will not conduct a post hoc review of the trial court's ruling based on information disclosed after the trial. Rather, Husband's arguments regarding the VIS are better raised in his claim that trial counsel was ineffective in failing to move for a new trial following the discovery of the information it contained. See infra ¶ 37.
[8] Although we have concluded that the 911 call was properly authenticated, it is at least notable that Wife's absence from trial provided trial counsel with the opportunity to challenge its admissibility.