**2015 UT App 193**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
CHACHI ADRIAN MARTINEZ,
Defendant and Appellant.

Opinion
No. 20130819-CA
Filed August 6, 2015

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 111906147

Craig L. Pankratz and David M. Corbett, Attorneys
for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGE
STEPHEN L. ROTH concurred. JUDGE MICHELE M. CHRISTIANSEN
concurred, with opinion.

PEARCE, Judge:

¶1     Chachi Adrian Martinez appeals from his convictions for aggravated assault and witness tampering. He argues that the trial court abused its discretion by refusing to strike prior-bad-acts evidence or declare a mistrial after defense counsel elicited such evidence from a witness during cross-examination. He also argues that the State's evidence was insufficient to support his conviction for aggravated assault because, in his view, the force he used was neither intended nor likely to cause serious bodily injury. We affirm.

BACKGROUND

¶2    We recite the evidence in the light most favorable to the jury's verdict and present conflicting evidence as necessary to understand the issues raised on appeal. *State v. Marchet*, 2014 UT App 147, ¶ 2 n.3, 330 P.3d 138.

¶3    Martinez, and his girlfriend A.V., attended a car show and a party. After Martinez left A.V. alone at the party, she became upset. The couple began to argue. During the argument, Martinez slapped A.V.'s left ear, pulled her to the ground by her hair, and told her to "shut the 'f' up." They were then asked to leave.

¶4    As they walked away from the party, Martinez and A.V. continued to argue. Martinez slapped A.V.'s other ear, leaving her unable to hear properly from either side. She grabbed his shirt, breaking the chain of a necklace he was wearing. Martinez yelled at her about the broken necklace and punched her with a closed fist, hitting the left side of her jaw. She fell to the ground, spitting blood. Martinez continued to punch and kick A.V. while yelling at her about the broken necklace.

¶5    A.V. eventually returned to the house, where some men attending the party saw her injured face and asked, "Did [Martinez] do this?" She responded that Martinez had. The men began to chase after Martinez, but A.V. asked them to stop because she "felt bad" for him.

¶6    Martinez then called A.V.'s mother, reporting that he and A.V. had argued, that he had hit her, and that he could not find her. Later that evening, A.V. found Martinez hiding in a backyard. He agreed to take her to the hospital. During the drive to the hospital, Martinez instructed her to report that a group of girls had "jumped" her. A.V. recited this version of events to hospital staff and to a police officer who investigated her injuries. The officer asked her to fill out a witness statement.

Because she was in pain, A.V. allowed Martinez to fill it out. A.V. signed the statement without reading it.[1]

¶7 After leaving the hospital, A.V. went to her mother's house and fell asleep. The next day, Martinez knocked on A.V.'s mother's bedroom door and asked for A.V.'s medical insurance card. A.V.'s mother then checked on A.V., who started to explain her injuries to her mother by saying that "she had been jumped by a bunch of girls." Her mother interrupted A.V., telling her that "[Martinez] already told me who hit you." Martinez, who was in the room, said, "I told your mom that I hit you."

¶8 A.V. then returned to the hospital, where she was scheduled for surgery to repair her jaw fractures. Surgeons attached titanium plates to A.V.'s jaw to return her teeth to their proper positions. A.V. suffers from long-term problems stemming from the injury.

¶9 After A.V. was released from the hospital, she asked her mother if she could stay at her mother's house. Her mother told A.V. that she could if she broke up with Martinez. A.V. refused, and the couple went to a hotel. However, shortly after arriving, they began arguing again. Martinez broke up with A.V. She then called her mother, who picked her up, took her home, and encouraged her to call the police. A.V. then filled out a second witness statement about the post-party incident.

¶10 Before trial, Martinez filed a motion in limine, seeking to exclude evidence of prior domestic violence against A.V. The prosecutor stated that he did not "expect to make the history of violence between the two a part of [his] case" and that he had

---

1. In the written statement, A.V. claimed that several girls at the party who she did not recognize had been "talking bad about me and the way I looked." She claimed that they had confronted and hit her and that she had blacked out.

warned A.V. and her mother not to testify to that history. The trial court stated that it was "nice" of the prosecutor to make such a stipulation but noted that the court "probably would allow" such evidence to the extent that it showed that "the same sort of thing [had] happened to this victim within the last couple of years." The court also observed that Martinez could still open the door to the introduction of prior-bad-acts evidence if he testified and denied assaulting A.V. The trial court did not further address Martinez's motion before trial.

¶11 During the course of the trial, the State did not present prior-bad-acts evidence. However, while cross-examining a police officer, Martinez's trial counsel inadvertently elicited such evidence twice.[2] Trial counsel asked the officer how he had responded after finding out that A.V. had checked into the hotel with Martinez on the day after the party.

> Q. Okay. And did you confront her about that?
> A. I did.
> Q. And what did she have to say?
> A. She broke down, started crying, told me that . . . [t]here'd been a history of violence with him and she was afraid of him.

¶12 Trial counsel did not immediately object or move to strike this testimony. Instead, trial counsel moved on to other questions. One of the other questions related to A.V.'s post-attack telephone contacts with Martinez.

> Q. Okay. And did you confront her with the evidence of the phone calls?
> A. I did.
> Q. And what was her reaction?
> A. I confronted her about the phone calls. She had told me that—she broke down and

---

2. Martinez is represented by new counsel on appeal.

started crying and told me that she—it was hard not to talk to—to [Martinez]. She had told me that they had a history of violence between her and [Martinez] and, at that point, also told me she wanted him prosecuted.

¶13  Trial counsel did not immediately object or move to strike this testimony either.[3] Instead, after the officer and the jury were excused, trial counsel moved for a mistrial. The trial court denied the motion, stating that the two "mentions of a history of violence" did not necessitate a mistrial.

¶14  The jury convicted Martinez of aggravated assault and witness tampering, second-degree and third-degree felonies respectively. Martinez appeals.

ISSUES AND STANDARDS OF REVIEW

¶15  Martinez first contends that the prior-bad-acts evidence was inadmissible and that the trial court should therefore have declared a mistrial. The decision to grant or deny a mistrial rests within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *State v. Calliham*, 2002 UT 86, ¶ 42, 55 P.3d 573.

¶16  Martinez further contends that the evidence presented to the jury was insufficient to sustain his conviction for aggravated assault. He argues that the State was required to present evidence that he used means or force likely to produce death or serious bodily injury and that the State failed to do so. "Issues

---

3. Trial counsel later explained that objecting or moving to strike the testimony in front of the jury would have risked "draw[ing] more attention to it."

that are not raised at trial are usually deemed waived." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801.

¶17     Martinez also contends that his trial counsel should have asked the trial court to reduce his conviction to simple assault because the evidence was insufficient to sustain his aggravated-assault conviction. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Beckering*, 2015 UT App 53, ¶ 18, 346 P.3d 672 (brackets, citation, and internal quotation marks omitted).

ANALYSIS

I. Rule 404(b) Evidence

¶18     Martinez contends that the officer's mentions of a "history of violence" were improper under rule 404(b) of the Utah Rules of Evidence and that the trial court should therefore have granted Martinez's motion for a mistrial.

¶19     After Martinez moved for a mistrial, the court noted, "As I said when this started, if they are [instances] that occurred with this victim, they're incidences of violence and they happened within a couple of years' time, I am likely to allow them to be admitted as 404(b) evidence in order to explain . . . the victim's behavior in not reporting this afterwards."[4] However, the trial

---

4. Martinez argues that the "history of violence" testimony did not explain A.V.'s "initial, inconsistent statement to police," because A.V. did not claim that "her initial statement derived from fear stemming from historical incidents." This argument assumes that the only possible inference from a history of violence is residual fear. However, we have recognized that it is

(continued…)

court did not directly determine whether the specific prior-bad-acts evidence elicited was admissible. Instead, the trial court agreed with the State that the challenged statements were brief and nonspecific, stating, "I do think the mention of the prior domestic violence was brief . . . ." The court concluded, "I'm not going to declare a mistrial at this time."

¶20 "A trial court judge is in an advantaged position to determine the impact of courtroom events on the total proceedings." *State v. Dalton*, 2014 UT App 68, ¶ 34, 331 P.3d 1110 (citation and internal quotation marks omitted). We will not reverse a trial court's denial of a motion for mistrial unless the trial court's determination is "plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to

---

(…continued)

not unusual for victims of persistent domestic violence to delay reporting or to recant their earlier statements. *See, e.g.*, *State v. Valdez*, 2007 UT App 112U, paras. 2–3 (noting an expert's testimony that Battered Woman Syndrome "is a subcategory of Post Traumatic Stress Disorder," "involves a 'cycle of violence' and a 'pattern of symptoms that women who are in abusive relationships have been through,'" and "can help explain why victims recant their testimony"); *see also* Cynthia L. Barnes, Annotation, *Admissibility of Expert Testimony Concerning Domestic-Violence Syndromes to Assist Jury in Evaluating Victim's Testimony or Behavior*, 57 A.L.R. 5th 315, § 2 (1998) (collecting cases and noting that victims in abusive relationships may be "reluctant to report the battering" due to economic dependence, may recant their testimony, and may give conflicting accounts of the source of their injuries); Njeri M. Rutledge, *Turning A Blind Eye: Perjury in Domestic Violence Cases*, 39 N.M. L. Rev. 149, 149 (2009) ("False statements in domestic violence cases are a significant problem and considered an epidemic with an estimated 40 to 90 percent of domestic violence victims recanting.").

have had a fair trial." *Id.* (citation and internal quotation marks omitted). Thus, "in order to obtain reversal, the defendant must make some showing that the verdict was substantially influenced by the challenged testimony." *State v. Milligan*, 2012 UT App 47, ¶ 7, 287 P.3d 1 (citation and internal quotation marks omitted).

¶21    Martinez asserts that "[w]hen the jury heard that there was a 'history of violence' between [A.V. and Martinez], it became impossible for the jury to believe that [A.V.'s] first account of what happened to her jaw was true." He argues that the jury thus "concluded that [Martinez] was a girlfriend beater who should be convicted no matter what." The State responds that the two references to a "history of violence" were brief, did not include any details, and were not referred to in closing arguments.

¶22    Brevity, vagueness, and absence from closing arguments are among the factors that militate in favor of a finding that improperly admitted evidence did not substantially influence the verdict. *See State v. Allen*, 2005 UT 11, ¶ 43, 108 P.3d 730 (holding that a mistrial was not necessary, because a witness's improper statement that the defendant had been asked to take a lie detector test was brief, vague, and not intentionally elicited, and because no further reference was made to it); *State v. Decorso*, 1999 UT 57, ¶¶ 38–39, 993 P.2d 837 (holding that a mistrial was not necessary, because a witness's reference to the defendant's "other crimes" was vague and insignificant); *State v. Case*, 547 P.2d 221, 223 (Utah 1976) (holding that a mistrial was not necessary where a witness twice mentioned that the defendant had been incarcerated for other crimes but neither the court nor either counsel further referred to that fact).

¶23    We agree with the State that the "history of violence" statements Martinez's trial counsel elicited were both brief and

vague. The entirety of the prior-bad-acts evidence consumed only four lines out of more than 175 pages transcribing two days of trial.[5] That testimony did not provide any details such as the nature of the violence or whether the police had previously been involved. Nor did either party refer to the "history of violence" testimony in closing arguments.

¶24    In contrast, the overwhelming majority of the evidence concerned the charged incident. A.V. testified that Martinez had hit her jaw and broken it. She also testified that Martinez had continued to hit her after she fell to the ground. A.V. testified that when she returned to the party and was asked whether Martinez had caused her injuries, she replied that he had, motivating a number of partygoers to chase after Martinez before A.V. stopped them. A.V.'s mother testified that Martinez had twice admitted to hitting A.V., once over the phone immediately after the incident and once when A.V. began explaining her injuries to her mother as the result of being "jumped by a bunch of girls."

¶25    On appeal, Martinez has failed to demonstrate that the challenged testimony substantially influenced the verdict. *See State v. Milligan*, 2012 UT App 47, ¶ 7, 287 P.3d 1. Accordingly, we cannot agree that "the trial court's determination [was] plainly wrong." *State v. Dalton*, 2014 UT App 68, ¶ 34, 331 P.3d 1110 (citation and internal quotation marks omitted). We therefore see no abuse of discretion in the trial court's determination that the "history of violence" statements did not warrant a mistrial.

---

5. We recognize that the trial court denied Martinez's mistrial motion after the first day of trial. Accordingly, the court was considering the four lines of testimony against 100 pages of transcript, rather than against the total of 175 pages ultimately heard by the jury.

II. Sufficiency of the Evidence

¶26    Martinez next contends that "there was insufficient evidence to convict [him] of aggravated assault." He notes that, to secure an aggravated assault conviction, the State was required to prove that he used "means or force likely to produce death or serious bodily injury." *See* Utah Code Ann. § 76-5-103 (LexisNexis 2012). He further notes that "a victim's injury does not determine the degree of an assault" and that it is the defendant's conduct, not the injury the victim actually suffers, which controls that determination. He asserts that the only evidence of the amount of force he used was the injuries suffered by A.V. Consequently, he argues, the evidence was insufficient to convict him of aggravated assault rather than simple assault.

¶27    We first consider whether this issue was properly preserved for appeal. "Issues that are not raised at trial are usually deemed waived." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801. An issue is preserved for appeal only if it was presented to the trial court in such a way that the trial court had an opportunity to rule on it. *Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 3, 330 P.3d 762. "The appellant must present the legal basis for [a] claim to the trial court, not merely the underlying facts or a tangentially related claim." *State v. Kennedy*, 2015 UT App 152, ¶ 21.

¶28    Martinez argues that his claim was preserved when he moved for a directed verdict:

> [The trial court]: All right. The State rests. Does [the] defense have a motion?
>
> [Trial counsel]: Your Honor, we'd make a motion for a directed verdict and just simply argue that the State has not met its burden on either of the two charges.

> [The trial court]: Okay. I think there has been successful evidence and I'll deny the motion to dismiss.

¶29 This brief exchange was inadequate to preserve Martinez's claim on appeal. Although the motion sought the same ruling—that the evidence was insufficient—it did not present the legal basis that Martinez now asserts on appeal. The argument raised on appeal concerns the line between direct and inferential evidence of the aggravating factor for one of the charges. In contrast, the directed-verdict motion simply asserted the more general proposition that the evidence presented for both charges was deficient in some unspecified way. We cannot conclude that the legal basis for Martinez's appellate claim was "presented to the trial court in such a way that the trial court had an opportunity to rule on it." *Wohnoutka*, 2014 UT App 154, ¶ 4 (brackets, citation, and internal quotation marks omitted); *see also Kennedy*, 2015 UT App 152, ¶ 21.

¶30 Martinez also argues that the ineffective-assistance-of-counsel exception to our preservation rule applies. "To succeed on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that the defendant was prejudiced thereby." *State v. Hards*, 2015 UT App 42, ¶ 18, 345 P.3d 769 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

¶31 According to Martinez, his trial counsel performed deficiently "by failing to ask the trial court to modify his conviction to simple assault." He asserts that the conduct underlying his conviction was not likely to produce death or serious bodily injury:

> Viewing the evidence in the light most favorable to the verdict, [Martinez] slapped [A.V.] with an open hand, pulled her to the ground by her hair, slapped her again with an open hand, punched her in the jaw with a closed fist, and hit and kicked her

several times while she was on the ground. None
of this conduct was sufficient to convict [Martinez]
of aggravated assault.

¶32    We disagree. Not all punches are created equal. Yet
Martinez's argument assumes that every punch is the same, no
matter the circumstances. So too for every slap and every kick.
But this is plainly not true. Because the force behind each blow
differs, a jury considering an aggravated assault charge may
infer from other evidence how much force a defendant actually
used and whether that force was likely to cause serious bodily
injury under the particular facts of the case. As the State phrases
it, "Whether force is likely to cause serious bodily injury is
quintessentially a jury question." (Citing *People v. Sargent*, 970
P.2d 409, 419 (Cal. 1999) ("Numerous cases have held that
whether the force used by the defendant was likely to produce
great bodily injury is a question for the trier of fact to decide.").)
And the extent and type of injuries the victim suffered are
among the types of evidence probative of that question. *Cf. State
v. Leleae*, 1999 UT App 368, ¶ 20, 993 P.2d 232 (concluding that
whether a broken jaw and the attendant difficulties it caused
amounted to "serious bodily injury" was a determination
"properly put before the jury to decide"). That a victim has
suffered a serious bodily injury does not by itself establish that
the defendant used force *likely* to cause that injury. But it is
within the province of the factfinder to infer from all of the
evidence—including the victim's injuries—that a defendant used
such force.

¶33    It follows that a motion asking the trial court to modify
Martinez's conviction from aggravated assault to simple assault
would have been futile because the inference the jury reached—
that Martinez used force likely to produce death or serious
bodily injury—was a reasonable one in light of the evidence
presented. Because "counsel's performance at trial is not
deficient if counsel refrains from making futile objections,
motions, or requests," we conclude that Martinez has not

established the deficient-performance element of his ineffective-assistance-of-counsel claim. *See Layton City v. Carr*, 2014 UT App 227, ¶ 19, 336 P.3d 587 (citation and internal quotation marks omitted).

CONCLUSION

¶34 We affirm the trial court's decision not to declare a mistrial, because Martinez has not shown that the trial court abused its discretion in determining that the prior-bad-acts evidence did not prejudice Martinez's defense. Martinez did not preserve his contention that the evidence of the amount of force he used was insufficient to sustain his conviction. Martinez has also failed to demonstrate that his counsel performed deficiently for neglecting to request a modification of his conviction on that basis.

¶35 Affirmed.

_____

CHRISTIANSEN, Judge (concurring):

¶36 I agree with the majority that given the evidence presented in this case, the officer's statements referencing a "history of violence" did not affect the outcome of Martinez's trial. I therefore concur fully in the majority opinion.

¶37 However, I write separately to note that this type of evidence should generally be admissible in cases involving domestic violence. Evidence of prior domestic violence is often helpful to explain the behavior of victims in the wake of a domestic-violence incident. *See supra* note 4. In my view, introducing this type of evidence to explain a domestic-violence victim's behavior is therefore a proper noncharacter purpose pursuant to rule 404(b).

¶38    Thus, so long as the trial court undertakes the scrupulous examination prescribed by *State v. Lucero*, 2014 UT 15, 328 P.3d 841, I believe evidence of a history of violence can be properly placed before the jury.

————————