2017 UT App 138

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
PATRICK RAYMOND YAZZIE,
Appellant.

Opinion
No. 20150945-CA
Filed August 3, 2017

Third District Court, West Jordan Department
The Honorable Bruce C. Lubeck
No. 151400258

Joan C. Watt, Wesley J. Howard, and Diana K.
Pierson, Attorneys for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and KATE A. TOOMEY concurred.[1]

ROTH, Judge:

¶1    Patrick Raymond Yazzie physically attacked Victim while
she was a guest at his house. Yazzie appeals his jury conviction
for aggravated assault, a third degree felony. We affirm.

---

1. Judge Stephen L. Roth participated in this case as a member of
the Utah Court of Appeals. He retired from the court before this
decision issued.

BACKGROUND[2]

¶2 Yazzie and Victim had known each other for some time. In January 2015, Yazzie invited Victim to his house after the two talked on the phone. He met her downtown; the two purchased some liquor together and then rode the train and a bus to the house Yazzie shared with his brother, sister, and niece. The two started drinking as soon as they arrived at the house. Over the next few days, they drank heavily and argued. At some point, the argument became physical, and Yazzie started "throwing [Victim] around," and hit Victim on the face, back, and legs. Yazzie hit Victim with his hand, and also hit her with an object "[a] couple of times" on her back. Yazzie bit Victim on her right cheek, puncturing her skin, and struck her in the mouth, driving her teeth through her lower lip.

¶3 Fearing the abuse would continue, Victim eventually called her mother (Mother) to come to the house and pick her up. When Mother arrived, Victim's face was "so full of blood she was unrecognizable." While Mother was in the room, Yazzie threw Victim into a wall. Victim tried to get up, but Yazzie kept "lean[ing] back" against Victim and "push[ing] her." Eventually Victim got up, but she appeared "very slow" and "really weak." Yazzie "kicked at" Victim while she tried to dress herself. Mother immediately took Victim to the hospital.

¶4 A nurse examined Victim when she arrived at the hospital. She "was trembling," her "hair was . . . messy [and] disheveled," and she "had blood all over her face." Victim told the nurse, "My whole body hurts. My back hurts really bad."

---

2. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citations and internal quotation marks omitted).

Victim reported that Yazzie bit her on her right cheek, hit her in the face, hit her on the back with a hammer, held her down, and raped her. She reported that her teeth had cut her lip as a result of Yazzie hitting her in the face.

¶5　The nurse observed several injuries on Victim's body consistent with her account of the assault. She had three puncture wounds to her lower lip and "tender bruising, multiple punctures . . . purple and red in color, [and] circular in shape," on her right cheek, consistent with a bite mark. Victim had a puncture and a tender bruise on her upper right arm, as well as a cut and a puncture on her left hand. She also had a "red, tender bruise" near her tailbone and "a lot of . . . swelling in the tissue" in that area, consistent with being hit by a hard object that was "circular like the head of a hammer." She also had a "red, tender bruise" on her upper mid-back and a "purple, tender bruise" with "red pinpoint hemorrhages" on her right inner thigh, consistent with blunt force trauma or "strangulation." On her left inner thigh, Victim had two circular, purple, tender bruises, and she also had a tender, red bruise on the back of her right leg. The nurse also noted an "extremely painful, dark purple bruise" near Victim's rectum and several lacerations on Victim's genital area.

¶6　The State charged Yazzie with aggravated kidnapping, a first degree felony; rape, a first degree felony; and two counts of aggravated assault, third degree felonies. The State later dismissed one of the aggravated assault counts.

¶7　The court instructed the jury that to convict Yazzie of aggravated assault, the prosecution had to prove beyond a reasonable doubt that Yazzie did:

> (1) . . . with unlawful force or violence, (a) cause or create a substantial risk of bodily injury to another; or (b) attempt to do bodily injury to another; or (c) threaten, accompanied by a show of immediate

force or violence, to do bodily injury to another; and

(2) . . . did such with the use of (a) a dangerous weapon, or (b) other means or force likely to produce serious bodily injury or death; and

(3) . . . such act was knowingly or intentionally done.

¶8 The court instructed the jury that "serious bodily injury" means "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ or creates a substantial risk of death" and that the term "dangerous weapon" means "any item capable of causing death or serious bodily injury or a facsimile or representation of such item." The jury convicted Yazzie of aggravated assault and acquitted him on the aggravated kidnapping and rape counts. Yazzie filed a timely appeal.

ISSUE AND STANDARD OF REVIEW

¶9 Yazzie contends that the State presented insufficient evidence to support a conviction for aggravated assault. Yazzie concedes that his challenge to the sufficiency of the evidence is unpreserved, and therefore challenges it on the basis of plain error. When challenging the sufficiency of the evidence under the plain error doctrine, "a defendant must demonstrate first that the evidence was insufficient to support a conviction of the crime charged and second that the insufficiency was so obvious and fundamental that the trial court erred in submitting the case to the jury." *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346. "When we consider an insufficiency of the evidence claim, we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Nielsen*, 2014 UT 10, ¶ 46, 326 P.3d 645 (citation and

internal quotation marks omitted). The evidence will be considered insufficient only if it "is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he or she was convicted." *Id.* (citation and internal quotation marks omitted).

## ANALYSIS

¶10    Yazzie contends that the State presented insufficient evidence to support a conviction for aggravated assault and that the insufficiency was "so obvious and fundamental" that the trial court plainly erred in entering an aggravated assault conviction.[3]

---

3. Yazzie also argues that "even if the evidence is insufficient as to only one aspect of aggravated assault, reversal is required," because, under the unanimity requirement, "a general verdict of guilty cannot stand if the State's case was premised on more than one factual or legal theory of elements . . . and any one of those theories is flawed." (Quoting *State v. Bair*, 2012 UT App 106, ¶ 63, 275 P.3d 1050.) He contends that because the State relied on both prongs of the "means" or "force" element and there was no special verdict form indicating on which alternative the jury relied, "it is impossible to determine whether the jury agreed unanimously on all of the elements of a valid and evidentially supported theory of the elements." (Quoting *Bair*, 2012 UT App 106, ¶ 63.) However, because we conclude that sufficient evidence existed for both theories of aggravated assault, it was not "an 'obvious and fundamental' error to submit the case to the jury" on either theory, even if the unanimity requirement applied to this crime—a question we do not decide. *See State v. Samples*, 2012 UT App 52, ¶ 14, 272 P.3d 788 (quoting *Holgate*, 2000 UT 74, ¶ 17).

¶11     At trial, the State bore the burden of proving beyond a reasonable doubt that Yazzie committed an assault either (1) with a dangerous weapon or (2) by means or force likely to cause death or serious bodily injury. *See* Utah Code Ann. § 76-5-103(1) (LexisNexis Supp. 2016).[4] Aggravated assault is defined as an actor's conduct:

> (a) that is:
>> (i) an attempt, with unlawful force or violence, to do bodily injury to another;
>> (ii) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another; or
>> (iii) an act, committed with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another; and
> (b) that includes the use of:
>> (i) a dangerous weapon [or] . . .
>> (ii) other means or force likely to produce death or serious bodily injury.

*Id.* Yazzie argues that the evidence was insufficient to prove that he committed an assault either (1) by using a dangerous weapon, or (2) by other means or force likely to cause death or serious bodily injury and that this insufficiency was so obvious and fundamental that the trial court plainly erred in submitting the

---

4. The aggravated assault statute was amended in 2016 to incorporate the general definition of assault and the definition of aggravated assault into a single statutory subsection. *Compare* Utah Code Ann. §§ 76-5-102(1), 103(1) (LexisNexis 2012), *with id.* § 76-5-103(1) (LexisNexis Supp. 2016). The definitional language remained the same after the 2016 amendment. *See id.* § 76-5-103(1) (LexisNexis Supp. 2016). For convenience, we refer to the amended version throughout this opinion.

case to the jury. We address each alternative in turn and conclude that any alleged insufficiency of the evidence was not such that it was an "obvious and fundamental" error to submit the case to the jury on either theory. *See State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346.

## I. Dangerous Weapon

¶12　Yazzie first argues that the evidence was legally insufficient to prove that he used a dangerous weapon during the course of an assault against Victim. We are not persuaded that there was such a dearth of evidence that the trial court plainly erred in submitting the case to the jury on this theory.

¶13　A dangerous weapon is defined by the statute as "any item capable of causing death or serious bodily injury." Utah Code Ann. § 76-1-601(5) (LexisNexis 2012). An item "will be considered a dangerous weapon if, based upon its actual use, subjectively intended use, or objectively understood use, it can cause death or serious bodily injury." *State v. C.D.L.*, 2011 UT App 55, ¶ 16, 250 P.3d 69 (citation and internal quotation marks omitted). Moreover, "because an item must simply be *capable* of causing death or serious bodily injury, an item not necessarily manufactured as a dangerous weapon may nonetheless become one." *Id.*

¶14　"[T]he question of whether an otherwise nondeadly object has been used in such a way that it is capable of causing death or serious bodily injury will generally be a question of fact." *Id.* ¶ 17. And "factual issues surrounding *how* an object was used or the effect of the object's use are best resolved by the fact finder." *Id.* (emphasis added). It follows, then, that when "an otherwise nondeadly object" is used as a weapon in an assault, the question of whether that object is "a dangerous weapon" under the circumstances of the case is generally a question for the jury. *See, e.g.*, *People v. Guzman*, 658 N.E.2d 1268, 1274 (Ill. App. Ct. 1995) (describing a tree branch as a dangerous weapon);

*Commonwealth v. Duggan*, No. 11-P-1359, 2012 WL 6684566, at *1 (Mass. App. Ct. Dec. 26, 2012) (describing a hammer as a dangerous weapon); *People v. Rivera*, 327 N.W.2d 386, 389 (Mich. Ct. App. 1982) (describing a bottle of wine as a dangerous weapon); *People v. Knapp*, 191 N.W.2d 155, 159–60 (Mich. Ct. App. 1971) (describing a broomstick as a dangerous weapon); *Bald Eagle v. State*, 355 P.2d 1015, 1017 (Okla. Crim. App. 1960) (describing a one-quart beer bottle as a dangerous weapon).

¶15    Yazzie argues that "the jury would have needed to engage in speculation to conclude Yazzie used a weapon" to injure Victim because no weapon was recovered from Yazzie's home or person and there was no evidence that Yazzie made any statements that he had a weapon. We disagree. There was evidence that Yazzie struck Victim with a hammer or a stick.

¶16    At trial, Victim testified that Yazzie hit her "[a] couple of times" on her back with "an object." When asked to elaborate about the nature of the object, Victim responded, "I'm not sure what. [It] was . . . a piece of skinny wood. I'm not sure . . . . Like a stick. A skinny, round stick or something." But the nurse who examined Victim at the hospital testified that on the day of the assault, Victim reported when she arrived that Yazzie "hit [her] on the back with the hammer." The nurse said that when she examined Victim's lower back injury and asked for an explanation for the injury, Victim responded, "He hit me with a hammer." The nurse stated that Victim had a "red, tender bruise" on the middle of her lower back "[d]own by the tailbone" with "a lot of edema or swelling in the tissue" and explained that edema "is fluid that comes to the tissue in response to an injury." The nurse also stated that the injury "was circular like the head of a hammer" and "matche[d] what [Victim] reported." The nurse explained that the edema was consistent with Victim's report and confirmed that "the mark [was] consistent with a hit from a hammer." The State published two photographs of the injury to the jury, which showed a distinct bruise in the center of Victim's lower back. Thus, there is

sufficient evidence from which a reasonable jury could conclude that Yazzie purposefully used a hammer to strike Victim on the back during a prolonged assault.

¶17    While Victim later described the object as a "skinny round stick" at trial, the jury could have believed her statement to the nurse within hours after the incident—that Yazzie struck her with a hammer—to be more credible, especially when that statement was specifically confirmed by the nurse's observations of the injuries and her testimony that "the mark [was] consistent with a hit from a hammer." *See State v. Cristobal*, 2010 UT App 228, ¶ 16, 238 P.3d 1096 ("When the evidence supports more than one possible conclusion, none more likely than the other, the choice of one possibility over another can be no more than speculation; while a reasonable inference arises when the facts can reasonably be interpreted to support a conclusion that one possibility is more probable than another."). *See also Proctor v. Costco Wholesale Corp.*, 2013 UT App 226, ¶ 26, 311 P.3d 564 ("It is the role of the jury to resolve conflicting factual testimony[.]"); *State v. Walker*, 765 P.2d 874, 874–75 (Utah 1988) (per curiam) ("It is the jury's duty to resolve all questions regarding the reliability of the testimony, and . . . [w]e may not substitute our judgment of credibility for the jury's." (citations and internal quotation marks omitted)).

¶18    Even though the evidence does not indicate that the hammer actually caused serious bodily injury, the jury had sufficient evidence to determine whether it was used "in such a way that it [was] *capable* of causing death or serious bodily injury." *See State v. C.D.L.*, 2011 UT App 55, ¶ 17, 250 P.3d 69 (emphasis added). Once Yazzie used the hammer as a weapon in his assault on Victim, the question of whether it qualified as a "dangerous weapon" under the statute became a factual issue concerning "how [the] object was used or the effect of the object's use . . . [which is] best resolved by the fact finder." *See id.* ¶¶ 16–17 (citation and internal quotation marks omitted).

¶19 And even if the object used in Yazzie's assault was a "long skinny stick," we are not persuaded that evidence of such a weapon, used as it was here to produce an injury equivalent to a hammer blow, would be so obviously insufficient that the trial court should have decided as a matter of law that the stick was incapable of causing serious bodily injury or death under the circumstances rather than submitting it to the jury to be resolved as a question of fact. *See id.* ¶ 18 (holding that although the defendant presented evidence to demonstrate that he did not use a motor vehicle in a manner clearly capable of inflicting grave injury or death, factual discrepancies regarding whether his use of the vehicle made it a dangerous weapon "present[ed] questions of fact . . . that are best resolved by the fact finder"). *Cf. Walker*, 765 P.2d at 874–75 (concluding that the evidence was sufficient to uphold a conviction of aggravated assault when a flat screw driver was collected at the scene of the crime, but the victim was not injured by the screw driver, failed to mention a screw driver to police, and testified that the defendant "held a sharp object against her neck" and that "she saw the metal end of that object sticking out of defendant's pocket"); *State v. Williams*, 2014 UT App 198, ¶¶ 12, 15, 333 P.3d 1287 (concluding that a walking stick used to beat the victim satisfied the dangerous weapon element of the aggravated armed robbery statute). In other words, whether that object was used to injure Victim's lower back "in such a way that it [was] capable of causing death or serious bodily injury" would reasonably have appeared to the trial court to be a factual issue concerning "how [the] object was used or the effect of the object's use . . . best resolved by the fact finder." *See C.D.L.*, 2011 UT App 55, ¶¶ 16–17.

¶20 Accordingly, we are not persuaded that any "alleged insufficiency of the evidence was such that it was an 'obvious and fundamental' error to submit the case to the jury" to decide the issue of whether Yazzie used a dangerous weapon in the course of an assault on Victim. *See State v. Samples*, 2012 UT App

52, ¶ 14, 272 P.3d 788 (quoting *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346).

II. Other Means or Force Likely to Produce Serious Bodily Injury

¶21 Yazzie next argues that the evidence is insufficient to prove the alternative theory that Yazzie used "other means or force" likely to cause death or serious bodily injury during the course of an assault on Victim.

¶22 Serious bodily injury is defined as "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death." Utah Code Ann. § 76-1-601(11) (LexisNexis 2012). "Whether force is likely to cause serious bodily injury is quintessentially a jury question." *State v. Martinez*, 2015 UT App 193, ¶ 32, 357 P.3d 27 (citation and internal quotation marks omitted). "And the extent and type of injuries [a] victim suffered are among the types of evidence probative of that question." *Id.*

¶23 The jury heard evidence that in the course of a prolonged assault lasting at least half an hour, Yazzie hit Victim on the face, back, and legs, bit her on the right cheek leaving puncture wounds in her skin, hit her in the face causing her teeth to puncture her lip, threw her into a wall, forcefully held her down, struck her in the back with a stick or a hammer, and used force that left her with lacerations on her genital area and a significant bruise near her rectum. Mother testified at trial and stated that when she arrived at Yazzie's house, Victim's face was "so full of blood she was unrecognizable" and there was "blood running down the inside of her legs."

¶24 The jury also received detailed evidence of the injuries Victim suffered as a result of the beating Yazzie inflicted on her and saw photographic documentation of each injury. The nurse described each of Victim's injuries: three punctures to her lower

lip; "tender bruising, multiple punctures . . . purple and red in color, [and] circular in shape," on her right cheek, consistent with a bite mark; a puncture and a tender bruise on her upper right arm; a cut and a puncture on her left hand; a "red, tender bruise" near her tailbone and "a lot of . . . swelling in the tissue" in that area, consistent with being hit by a hard object that was "circular like the head of a hammer"; a "red, tender bruise" on her upper mid-back; a "purple, tender bruise" with "red pinpoint hemorrhages" on her right inner thigh, consistent with blunt force trauma or strangulation; two circular, purple, tender bruises on her left inner thigh; a tender, red bruise on the back of her right leg; and bruises and lacerations on her genital area. The nurse indicated that "if it's a more recent injury, then [a bruise] will be tender." The State published photographs of most of the injuries to the jury.[5]

¶25 Given the extent and nature of the evidence presented, we conclude that it would not have been obvious to the trial court that the evidence that Yazzie used other means or force likely to produce death or "serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or . . . a substantial risk of death" was insufficient as a matter of law to support a jury determination on this element. *See* Utah Code Ann. § 76-5-103(1) (LexisNexis Supp. 2016); *id.* § 76-1-601(11) (LexisNexis 2012). The judge and jury heard Victim's account of a prolonged assault that produced numerous injuries affecting multiple areas of her body and received evidence of each injury she suffered, including detailed testimony from the nurse who treated her within hours after the assault and extensive photo documentation. The extent and type of injuries Victim suffered are among the types of evidence probative of the question of whether "other means or force" was

---

5. The State published a diagram of Victim's genital injuries in place of a photograph.

likely to cause serious bodily injury. *See Martinez*, 2015 UT App 193, ¶ 32. And "[b]ecause the force behind each blow differs, a jury considering an aggravated assault charge may infer from other evidence how much force a defendant actually used and whether that force was likely to cause serious bodily injury under the particular facts of the case." *See id.* Further, the jury could reasonably have concluded that the extent and severity of the beating, which included multiple injuries to almost every part of Victim's body, indicated that Yazzie used "other means or force likely to produce death or serious bodily injury." *See* Utah Code Ann. § 76-5-103(1)(b)(ii).

¶26   Thus, the State presented substantial evidence of "the extent and type of injuries [Victim] suffered." *See Martinez*, 2015 UT App 193, ¶ 32. And because the question of "[w]hether force is likely to cause serious bodily injury is quintessentially a jury question," *id.* (citation and internal quotation marks omitted), it was not "an 'obvious and fundamental' error to submit the case to the jury" under the circumstances, *see State v. Samples*, 2012 UT App 52, ¶ 14, 272 P.3d 788 (quoting *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346). Accordingly, the trial court did not plainly err in submitting to the jury the issue of whether Yazzie used means or force likely to produce death or serious bodily injury during the course of an assault on Victim.

## CONCLUSION

¶27   Yazzie has failed to demonstrate that any alleged insufficiency of the evidence was so obvious and fundamental that the trial court erred in submitting the case to the jury. We accordingly affirm Yazzie's jury conviction.

———————