# 2018 UT App 113

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LUIS A. TORRES JR.,
Appellant.

Opinion
No. 20160879-CA
Filed June 14, 2018

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 161900917

Peter A. Daines, Attorney for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN concurred.

HAGEN, Judge:

¶1     A jury convicted Luis A. Torres Jr. of one count of aggravated assault (Count 1), a felony, and one count of assault (Count 2), a misdemeanor, stemming from violent acts that he committed during an argument with the victim, his then-girlfriend. Torres appeals his conviction on Count 1, arguing that he received constitutionally ineffective assistance of counsel because his trial counsel did not move for a directed verdict and did not object to the admission of instant messages in which Torres admitted to prior acts of abuse against the victim. Because the State produced sufficient evidence to justify submitting the case to the jury, trial counsel did not perform deficiently in failing to raise a futile motion. In addition, given the strong evidence of guilt, any error in admitting the contested messages at trial did not prejudice the defense. Accordingly, we affirm.

BACKGROUND

¶2     Torres and the victim had been involved in an on-again-off-again relationship for several years. Late one evening, the victim planned to spend the night with Torres at his father's apartment, but the couple began arguing. Torres eventually "tossed" his cell phone at the victim, hitting her in the chin. After exchanging "fuck you[s]," Torres told the victim to leave.

¶3     As the victim gathered her belongings, Torres punched her in "the back of [the] head." The victim began crying and told Torres not to hit her. In response, Torres said, "Stop fucking crying, I didn't hit you that hard." The argument moved into the kitchen where Torres hit the victim with his hand "next to her left eye" before he walked out of the apartment. According to the victim, although Torres's father, sister, and the sister's children were asleep in the apartment at the time, no one stirred during the argument.

¶4     After the victim finished gathering her belongings, she walked out to the parking lot where she noticed Torres crouched down next to the rear passenger tire of her vehicle. Assuming that Torres was letting air out of her tire, the victim yelled, "[W]hy are you doing this?"

¶5     The victim moved toward the driver's side of her vehicle, but Torres blocked the door and refused to budge. The victim went around to the rear passenger door and crawled through her car to the driver's seat while Torres climbed into the passenger seat beside her. She begged Torres to let her leave, but he responded, "[F]uck you bitch." When the victim then attempted to start the ignition, Torres grabbed her keys, got out of her car, and got into his own.

¶6     In response, the victim walked to the driver's side of Torres's vehicle and asked him to return her keys and to "just leave her alone." Torres refused and started his vehicle. To prevent Torres from leaving with her keys, the victim stood in

front of his vehicle. Undeterred, Torres shifted his vehicle into drive and, without accelerating, let it roll forward. The victim began moving backward, but Torres's vehicle hit the top of her legs several times. Torres then told the victim that "[she was] going to fuckin' die tonight."

¶7      The victim repeatedly yelled at Torres to return her keys. Instead of complying, Torres slowly accelerated his vehicle, hitting the victim and causing her to fall backward. The victim testified that Torres's vehicle rolled over her until its front bumper was positioned just below her chest. At trial, Torres argued that it would have been physically impossible for his vehicle to roll over the victim in the manner that she described without causing significant injury because the vehicle, which was equipped with a customized air suspension system, was lowered and sat a mere seven-and-a-half inches off the ground.

¶8      When the victim stood up, she was "hysterical," yelling at Torres to return her keys and let her leave. However, Torres accelerated and hit the victim again, sending her onto the hood of his vehicle. After the victim rolled off hood and landed on the ground, Torres said, "Fuck you bitch," threw her keys to her, and drove off. At trial, Torres's sister testified that she had looked through her bedroom window and had seen the couple arguing face-to-face. And, according to his sister, when the victim asked for her keys, Torres threw them into the air, got into his car, and drove off.

¶9      The victim contacted police later that afternoon to report the altercation. During the 911 call, the victim told the dispatcher that Torres hit her with his vehicle, but she did not say that the vehicle had rolled over her. According to the victim, she "was just trying to be . . . short and simple" during the 911 call because she knew that she would go into more detail with an officer when she made a full report.

¶10     That same day, the victim met with an officer, who interviewed her and took photos of her injuries: bruising to both

legs and her left eye. Ten hours after that initial interview, the officer drafted a report, which indicated that the victim said that she had been standing behind Torres's vehicle, not in front of it. This report differed from the victim's statement to the 911 dispatcher. It also differed from a written statement that she filled out several days after the altercation in which she reported that she had been standing in front of Torres's vehicle.

¶11 Approximately one week later, Torres and the victim exchanged a series of Facebook instant messages. In those messages, Torres said that he was "really sorry," that the way he treated the victim was "uncalled for," and that he wanted to turn himself in. In addition to expressing remorse about the altercation, in several of the messages, Torres acknowledged that he had previously abused the victim. Specifically, the messages included statements, such as "I beat you every day . . . I'm such a[n] abusive person," "all I do is beat u," and "sorry for all the hurt and abuse." The district court admitted all of the messages at trial without objection from Torres's counsel.

¶12 A jury convicted Torres of one count of aggravated assault, a third degree felony, *see* Utah Code Ann. § 76-5-103(1) (LexisNexis 2017), and one count of assault, a class A misdemeanor, *see id.* § 76-5-102. Prior to jury deliberation, Torres did not move for a directed verdict or otherwise challenge the sufficiency of the evidence supporting his conviction for aggravated assault. Torres timely appeals, asking this court to reverse his conviction on Count 1 and remand for a new trial.

ISSUES AND STANDARD OF REVIEW

¶13 Torres raises two issues on appeal. First, he contends that "the State presented insufficient evidence to establish beyond a reasonable doubt that [he] assaulted [the victim] with his car." Recognizing that this claim is unpreserved, Torres asks that we review this issue under the ineffective-assistance-of-counsel exception to the preservation requirement. Second, Torres

contends that "[c]ounsel rendered ineffective assistance of counsel by failing to object to the admission of Facebook messages, which contained inadmissible and prejudicial character evidence." "We review claims of ineffective assistance of counsel raised for the first time on appeal for correctness." *State v. Jaramillo*, 2016 UT App 70, ¶ 24, 372 P.3d 34 (quotation simplified).

ANALYSIS

¶14    To prevail on an ineffective assistance of counsel claim, a defendant must establish both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [a defendant's] claims under either prong." *Honie v. State*, 2014 UT 19, ¶ 31, 342 P.3d 182. In this case, we review the first issue under the deficiency prong and the second issue under the prejudice prong. We ultimately conclude that Torres did not receive ineffective assistance of counsel.

I. Sufficiency of the Evidence

¶15    Torres first contends that trial counsel rendered constitutionally ineffective assistance by failing to move for a directed verdict or otherwise challenge the sufficiency of the evidence supporting his aggravated assault charge. In particular, Torres argues that "the State offered only inconclusive and inherently improbable testimony that, when viewed in the light most favorable to the State, did not establish that he assaulted [the victim] with [his vehicle]." Because we conclude a motion for directed verdict based on the sufficiency of the evidence would have been futile, counsel's performance was not objectively deficient. *See State v. Millerberg*, 2018 UT App 32, ¶ 12, 414 P.3d 1106 (per curiam) (concluding that the defendant could not establish ineffective assistance where "[a] motion for

directed verdict would have been futile given the evidence presented"), *petition for cert. filed*, Apr. 26, 2018 (No. 20180314).

¶16    In evaluating counsel's performance under *Strickland*'s deficiency prong, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). To rebut that presumption, a defendant "must identify specific acts or omissions demonstrating that counsel's representation failed to meet an objective standard of reasonableness." *State v. Montoya*, 2004 UT 5, ¶ 24, 84 P.3d 1183 (quotation simplified). In other words, a defendant must establish "that the challenged actions cannot be considered sound strategy under the circumstances." *State v. Calvert*, 2017 UT App 212, ¶ 22, 407 P.3d 1098 (quotation simplified). Because "the decision not to pursue a futile motion is almost always a sound trial strategy, counsel's failure to make a motion that would be futile if raised does not constitute deficient performance." *Id.* (quotation simplified).

¶17    Here, trial counsel could have reasonably concluded that a motion for directed verdict would have been futile. "[W]hen conflicting or disputed evidence is presented at a jury trial, the jury serves as *the exclusive judge* of both the credibility of the witnesses and the weight to be given particular evidence." *State v. Prater*, 2017 UT 13, ¶ 31, 392 P.3d 398 (quotation simplified). On "a motion for a directed verdict[,] the court is not free to weigh the evidence and thus invade the province of the jury, whose prerogative it is to judge the facts." *Montoya*, 2004 UT 5, ¶ 32 (quotation simplified). Rather, viewing the evidence in the light most favorable to the State, the court must "determine whether the state has produced 'believable evidence' on each element of the crime from which a jury, acting reasonably, could convict the defendant." *Id.* "If there is any evidence, however slight or circumstantial, which tends to show guilt of the crime charged," the court must submit the case to the jury. *Id.* ¶ 33 (quotation simplified).

¶18    Torres argues that the allegation that his vehicle rolled over the victim to her mid-torso formed the basis of the State's theory at trial and that the victim's testimony on this point was "too dubious to believe." Although the trial court "must ordinarily accept the jury's determination of witness credibility, when the witness's testimony is inherently improbable, the court may choose to disregard it." *State v. Robbins*, 2009 UT 23, ¶ 16, 210 P.3d 288. This limited exception applies only when "(1) there are material inconsistencies in the testimony and (2) there is no other circumstantial or direct evidence of the defendant's guilt." *Id.* ¶ 19. Thus, a trial court may disregard a witness's testimony and direct the verdict in favor of a defendant only if the evidence "is sufficiently inconclusive or inherently improbable [such] that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he or she was convicted." *State v. Yazzie*, 2017 UT App 138, ¶ 9, 402 P.3d 165 (quotation simplified); *see also Robbins*, 2009 UT 23, ¶ 18 (explaining that a witness's testimony is "inherently improbable" if it includes "circumstances [that are] incredibly dubious and, as such, apparently false").

¶19    We need not determine whether it was "inherently improbable" for Torres's vehicle to roll over the victim. Even if we were to disregard the victim's testimony on this point as inherently improbable, there is sufficient independent evidence to sustain Torres's conviction. To convict Torres of aggravated assault, the jury had to find beyond a reasonable doubt that Torres intentionally, knowingly, or recklessly used a dangerous weapon[1] to engage in conduct that qualified as one of the following:

---

1. Torres concedes that a car may be considered a "dangerous weapon" under Utah Code section 76-1-601. *See Mackin v. State*, 2016 UT 47, ¶¶ 29–31, 387 P.3d 986.

> i. an attempt, with unlawful force or violence, to do bodily injury to another;
>
> ii. a threat, accompanied by a show of immediate force or violence, to do bodily injury to another; or
>
> iii. an act, committed with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another.

Utah Code Ann. § 76-5-103(1)(a) (LexisNexis 2017); *see also id.* § 76-2-102 (stating that "when the definition of the offense does not specify a culpable mental state and the offense does not involve strict liability, intent, knowledge, or recklessness shall suffice to establish criminal responsibility").

¶20 Even setting aside the victim's testimony that the vehicle knocked her down and rolled over her to mid-torso, Torres's other acts were sufficient to establish the elements of aggravated assault. Torres initially rolled his vehicle into the victim's legs several times, warning her that "[she was] going to fuckin' die tonight." This act, standing alone, constitutes "a threat, accompanied by a show of immediate force or violence," to do bodily injury to the victim using the vehicle as a dangerous weapon. *See id.* § 76-5-103(1)(a)(ii). In addition, the victim testified that after the vehicle rolled over her and she regained her footing, Torres accelerated into her a second time, sending her onto the hood of the vehicle until she rolled onto the ground. To corroborate the victim's testimony, the State presented photographic evidence to the jury, depicting the victim's bruised legs. A jury could have reasonably found that this separate act constituted either an attempt to do bodily harm with the vehicle or a completed act. *See id.* § 76-5-103(1)(a)(i), (iii). Because "[t]he jury is free to believe or disbelieve all or part of any witness's testimony," *State v. Hayes*, 860 P.2d 968, 972 (Utah Ct. App. 1993), it could have believed the victim's testimony on these points

while disregarding the allegation that the vehicle had rolled over her body to mid-torso.

¶21 In addition, "[t]he existence of any additional evidence supporting the verdict prevents the judge from reconsidering the witness's credibility." *Robbins*, 2009 UT 23, ¶ 19. Contrary to Torres's assertion that "there is no other circumstantial or direct evidence of [his] guilt," the victim's account was corroborated by other evidence, including the messages where Torres apologized for "the way I was with you" and offered to turn himself into authorities, the testimony from Torres's sister that Torres and the victim were engaged in an altercation outside by their vehicles on the night in question, and the photographs of the victim's bruised legs. This additional evidence not only supported the verdict but also prevented the judge from reevaluating the victim's credibility. *See id.* And although Torres's sister's testimony partially contradicted the victim's, "when the evidence presented is conflicting or disputed, the jury serves as the exclusive judge of both the credibility of witnesses and the weight to be given particular evidence." *State v. Johnson*, 2015 UT App 312, ¶ 10, 365 P.3d 730 (quotation simplified). Accordingly, the existence of conflicting evidence alone cannot justify taking the case away from the jury. *See State v. Garcia-Mejia*, 2017 UT App 129, ¶ 19, 402 P.3d 82 (explaining that "the existence of contradictory evidence or of conflicting inferences does not warrant disturbing the jury's verdict" (quotation simplified)).

¶22 Torres contends that the remainder of the victim's testimony contained "'material inconsistencies' rendering it too inconclusive to support a conviction beyond a reasonable doubt that he committed any act, attempt, or threat with [his vehicle] to do bodily injury." (Quoting *State v. Lomu*, 2014 UT App 41, ¶ 14, 321 P.3d 243.) Torres has not identified any material inconsistencies that would justify a directed verdict. A jury could have reasonably concluded that the differences between the victim's prior statements and her testimony at trial were due to the victim previously providing incomplete statements, the

officer misreporting her statement, or a simple misunderstanding.[2]

¶23   Even assuming that the victim's prior statements were inconsistent with her trial testimony, inconsistent statements alone are insufficient for a trial court to reassess a witness's credibility because they "do not render [her] testimony 'apparently false.'" *See Prater*, 2017 UT 13, ¶¶ 38–39. In *Robbins*, for example, our supreme court held that a child's testimony about alleged sexual abuse "was so inherently improbable that the trial court had discretion to disregard it when considering whether sufficient evidence supported [Robbins's] conviction." 2009 UT 23, ¶ 13. But the multiple inconsistencies in the child's testimony, standing alone, were insufficient to invoke the inherent improbability exception. *See id.* ¶ 22. Instead, "[i]t was the inconsistencies in the child's testimony *plus* the patently false statements the child made *plus* the lack of any corroboration that allowed [the] court to conclude that insufficient evidence supported Robbins's conviction." *Prater*, 2017 UT 13, ¶ 38 (explaining the holding in *Robbins*). Unlike *Robbins*, the victim's

---

2. Torres also claims that (1) the victim had an incentive to lie to obtain housing based on her status as a domestic abuse victim and (2) she admitted to previously lying to him about being pregnant. Evidence suggesting that a witness is biased or has a character for untruthfulness is insufficient to justify taking the case from the jury. It was squarely within the province of the jury to weigh this evidence in assessing the victim's credibility. *See State v. Crespo*, 2017 UT App 219, ¶¶ 32–33, 409 P.3d 99 (affirming denial of motion for a directed verdict despite claims that codefendant had previously lied to police and had a motive to fabricate testimony in exchange for a plea deal because it is the "exclusive function of the jury to weigh the evidence and to determine the credibility of the witnesses" (quotation simplified)).

testimony here was not the only evidence that Torres had committed aggravated assault.

¶24 Because there was sufficient evidence from which a reasonable jury could have found Torres guilty beyond a reasonable doubt, a motion for directed verdict would have been futile. Therefore, trial counsel did not perform deficiently in failing to move for a directed verdict.

## II. Character Evidence

¶25 Torres contends that trial counsel "rendered ineffective assistance of counsel by failing to object to the admission of Facebook messages, which contained inadmissible and prejudicial character evidence." While Torres concedes that "some components of the messages have relevance" because they "describ[e] the incident at issue," he maintains that "[c]ounsel should have objected to [the messages'] admissibility as a whole and should have sought to redact the improper components that . . . describe prior acts of violence." Specifically, in some messages, Torres acknowledged that he "abuse[s]" the victim and that he is "an abusive person." He also stated, "[A]ll I do is beat u," "I beat you every day," and "sorry for all the hurt and abuse. At least I can't beat u no more." In response, the victim said, "U do this every time you beat me up." Torres contends that these "messages were prejudicial . . . because they instructed the jury to view the incident in the context of a broader violent history between [the victim] and Torres, prompting the jury to be more inclined to believe [the victim's] allegations at trial."

¶26 As previously discussed, *supra* ¶ 14, because failure to establish either prong is fatal to a defendant's ineffective assistance of counsel claim, "[w]e may choose not to consider the adequacy of counsel's performance if we determine that any claimed error was not harmful." *State v. Dunn*, 850 P.2d 1201, 1226 (Utah 1993). To establish that an error was harmful, "[a] defendant must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Here, Torres has not established that there is a reasonable probability that the jury would have acquitted him of aggravated assault had trial counsel objected to the admission of the messages.

¶27 The Utah Supreme Court has recognized that "evidence of multiple acts of similar or identical abuse is unlikely to prejudice a jury." *State v. Reed*, 2000 UT 68, ¶ 31, 8 P.3d 1025. In *Reed*, the defendant, who had been charged with aggravated sexual assault, argued that Utah statutory law entitled him to a bifurcated trial in which the State had to prove the underlying offense before evidence of the aggravating offenses could be presented to the jury. *Id.* ¶ 20. In determining whether evidence of the aggravating offenses was admissible, the court weighed the probative value of the evidence against the potential for unfair prejudice. *Id.* ¶ 29; *see also* Utah R. Evid. 403. The court concluded that the evidence was not unduly prejudicial, reasoning that the offenses "were essentially interchangeable, were of the same nature and character as the primary offense, and were carried out on the same victim." *Reed*, 2000 UT 68, ¶ 31. Such evidence does not pose the same risk that "may result from introduction of prior criminal acts committed against a number of unrelated victims." *Id.*

¶28 The same rationale can be extended to this case. Here, Torres challenges the admission of several messages in which he admits to previously abusing the victim. Even if defense counsel should have moved to redact those admissions, the broad statements that Torres had abused the same victim in the past amounted to "evidence of multiple acts of similar or identical abuse" that was unlikely to prejudice a jury. *See id.* Significantly, the messages were not the only evidence before the jury that painted Torres as an abusive partner. The State presented indisputably admissible evidence in support of Count 2, the

misdemeanor assault count, that Torres hit the victim several times while the couple argued inside the apartment. At trial, Torres did not dispute these allegations nor does he seek reversal of the assault conviction on appeal.[3] Because the admissions of past abusive behavior toward the victim were of "the same nature and character" as the undisputed conduct giving rise to Count 2, the risk of undue prejudice was greatly reduced.

¶29 The central issue at trial was whether Torres had assaulted the victim with his vehicle, thereby committing aggravated assault with a dangerous weapon as charged in Count 1. None of the messages suggested that Torres had previously assaulted the victim with a vehicle or any other dangerous weapon. As a result, the messages had no potential to bolster the victim's credibility with respect to the disputed issues. Because the messages did not suggest prior abuse that was more serious than the abuse Torres acknowledged committing, he has failed to establish a reasonable probability that the jury would have acquitted had the messages been redacted.

CONCLUSION

¶30 We conclude that it was sound trial strategy for counsel not to challenge the sufficiency of the evidence in this case because such a challenge would have been futile. Additionally,

_____

3. In closing argument, defense counsel explained that Torres was not contesting that he

> threw a phone at her, punched her in the back of the head and then he slapped her in the face or hit her in the eye. . . . That is horrible that he was abusive to her, that is horrible. We are not here to justify that. That would be Count 2. We are here talking about Count 1.

there is no reasonable probability that the jury would have acquitted Torres of aggravated assault had the messages been redacted because the prior acts of assault described in the messages are no more egregious than those charged in the primary offense and did not bolster the victim's credibility regarding the disputed issues.

¶31    Affirmed.

——————